IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| TRACY BROADCASTING CORP., | ) | |
| | ) | |
| Plaintiff, | ) | 8:06CV336 |
| | ) | |
| vs. | ) | ORDER |
| | ) | |
| SPECTRUM SCAN, LLC, | ) | |
| | ) | |
| Defendant, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| MICHAEL TRACY, | ) | |
| | ) | |
| Counter-Defendant. | ) | |

This matter is before the court on Tracy Broadcasting Corporation (TBC) and Michael Tracy's (collectively Tracy) Motion for Partial Summary Judgment (Filing No. 64) and Motion for Judgment on the Pleadings (Filing No. 81). Both motions are fully briefed and will be addressed separately below. The court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332, as the parties are citizens from different states and the amount in controversy exceeds $75,000. Pursuant to 28 U.S.C. § 636 and the consent of the parties, the undersigned magistrate judge is specially designated to exercise jurisdiction over this matter. **See** Filing No. 13.

## BACKGROUND

This matter arises out of a dispute regarding an agreement between TBC and Spectrum entered into on February 14, 2004. **See** Filing No. 1, ¶ 3; Filing No. 56. Initially, TBC filed a complaint against Spectrum, seeking a declaratory judgment regarding the agreement between the parties involving the sale of KMOR, one of the radio stations owned by TBC. **See** Filing No. 1 Ex. A - Complaint ¶¶ A-D. Spectrum alleges the agreement between TBC and Spectrum required TBC to sell KMOR and to give 40% of the purchase price from the sale of KMOR to Spectrum in exchange for work Spectrum

performed in upgrading KMOR's radio station license.  **See** Filing No. 38 - Counterclaim p.1.  Spectrum filed an answer to TBC's complaint and a counter-claim against TBC.  **See** Filing No. 5.  In this initial counter-claim, Spectrum sought to recover $1,400,000 plus costs from TBC for TBC's alleged failure to fulfill its contractual obligations under the agreement.  *Id.*

On April 26, 2007, Spectrum filed a Second Amended Counter-Claim and Cross-Complaint, in which Spectrum joined Mr. Tracy as a new party to the previously filed counter-claim against TBC.  **See** Filing No. 38, ¶ 5.  Mr. Tracy is the president and owner of TBC.  Spectrum's Second Amended Counter-Claim and Cross-Claim alleges nine theories of liability against Mr. Tracy, TBC, or both.  Specifically, Spectrum avers breach of contract by TBC (Count 1), fraud by Tracy (Count 2), tortious interference by Mr. Tracy (Count 3), fraudulent conveyance by TBC (Count 4), aiding and abetting in a fraudulent conveyance by Mr. Tracy (Count 5), impossibility of performance (Count 6), abuse of process by TBC (Count 7), and quantum meruit and unjust enrichment against TBC (Counts 8 and 9).  **See** Filing No. 38.  These claims are based on Spectrum's allegations that Mr. Tracy, with TBC, attempted to defraud Spectrum by transferring an interest in KMOR to Tigre Broadcasting, an entity primarily owned by Tracy.  *Id.*  Further, Spectrum alleges Tracy concealed the transfer so as to avoid selling KMOR and paying Spectrum's fee.  *Id.*  Spectrum seeks punitive damages in connection with the claims against TBC and Mr. Tracy.

## SUMMARY JUDGMENT

On October 1, 2007, Tracy filed a motion for partial summary judgment.  **See** Filing No. 64.  Tracy filed a brief (Filing No. 66) and an index of evidence (Filing No. 65) in support of the motion.  Spectrum Scan, LLC filed a brief (Filing No. 72) and an index of evidence (Filing No. 73) in opposition to the motion.  Tracy did not file a reply brief.

Tracy seeks a judgment in favor of the plaintiff on the complaint and in favor of Tracy on Counts 1 through 7 of the defendant's Second Amended Counter-Claim and Cross-Complaint.  Tracy contends the agreement entered into by the plaintiff and the defendant is so indefinite and uncertain as to the promises and performances of the

parties, particularly with regard to the term "highest offeror," that the agreement is not enforceable as a matter of law. Spectrum, in contrast, contends the agreement unambiguously stated all material terms and compelled Tracy to accept the highest offer of $3.5 million from Marathon Media and to pay Spectrum's fee. Further, Spectrum contends the term "highest offeror" is unambiguous and requires no definition, and the agreement obligated Tracy to perform within a reasonable time.

For purposes of the motion for summary judgment, the court incorporates the following uncontroverted facts.

### A.     Uncontroverted Facts

On February 14, 2004, TBC and Spectrum entered into an agreement for the upgrade, marketing and sale of TBC's radio station, KMOR, by Spectrum. **See** Filing No. 28 - Answer and Counterclaim ¶ 17, incorporated by Filing No. 38 - Second Amended Counterclaim ¶ 1. In the agreement, TBC agreed to sell KMOR to the "highest offeror" and pay Spectrum 40% of the sale price. **See** Filing No. 65, Ex. 2 - Feb. 14, 2004 Agreement ¶ 3. The agreement states, in relevant part:

> If the changes proposed in the Upgrade Request are adopted by the FCC in a final order ("the FCC RuleMaking Approval"), then Spectrum Scan and the Owner will market KMOR for sale, and the Owner will sell KMOR to the highest offeror.

*Id.* ¶ 3(a).

The Agreement does not include a definition of "highest offeror" and does not set forth a time period for performance of the Agreement. **See** *id.* Sectrum secured the allotment upgrade discussed in the Agreement, and in June 2004, the FCC approved Spectrum's request to move KMOR's license. **See** Filing No. 73-6, Ex. E - June 27, 2004 E-mail from Mr. Tracy (Depo. Ex. 11). Tracy received bids or offers in July 2004 for $1.2 million and in February 2005 for $3.1 million and $3.5 million. **See** Filing No. 73, Ex. A - Mr. Tracy Depo. pp. 151, 183; Ex. I - Feb. 8, 2005 Letter.

**B.      Legal Standard**

Pursuant to the Federal Rules of Civil Procedure, summary judgment is appropriate when, viewing the facts and inferences in the light most favorable to the nonmoving party, "there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); **see *Nat'l Am. Ins. Co. v. W & G, Inc.***, 439 F.3d 943, 945 (8th Cir. 2006). When making this determination, a court's function is not to make credibility determinations and weigh evidence, or to attempt to determine the truth of the matter; instead, a court must "determine whether there is a genuine issue for trial." ***Anderson v. Liberty Lobby, Inc.***, 477 U.S. 242, 249 (1986). A court must "look to the substantive law to determine whether an element is essential to a case, and '[o]nly disputes over facts might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.'" ***Chambers v. Metro. Prop. & Cas. Ins. Co.***, 351 F.3d 848, 853 (8th Cir. 2003) (**quoting *Anderson***, 477 U.S. at 248). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses, and [the rule] should be interpreted in a way that allows it to accomplish this purpose." ***Celotex Corp. v. Catrett***, 477 U.S. 317, 323-24 (1986).

Additionally, Rule 56(e) provides:

> When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must–by affidavits or as otherwise provided in this rule–set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party.

**See** Fed. R. Civ. P. 56(e)(2). A party seeking summary judgment bears the burden of informing a court "of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." ***Celotex***, 477 U.S. at 323 (**quoting** Fed. R. Civ. P. 56(c) (amended rule states "the pleadings, the discovery and disclosure materials on file, and any affidavits")). The court considers only admissible evidence and disregards portions of various affidavits and

depositions that were made without personal knowledge, consist of hearsay, or purport to state legal conclusions as fact.  **Murphy v. Missouri Dep't of Corr.**, 372 F.3d 979, 982 (8th Cir. 2004); Fed. R. Civ. P. 56(e)(1).  Under this court's local rules:

> The moving party shall set forth in the brief in support of the motion for summary judgment a separate statement of material facts as to which the moving party contends there is no genuine issue to be tried and that entitle the moving party to judgment as a matter of law.

**See** NECivR 56.1(a)(1).

In the face of a properly supported motion, the burden then shifts to the nonmoving party to "set forth specific facts showing there is a genuine issue for trial."  Fed. R. Civ. P. 56(e)(2); **Rodgers v. City of Des Moines**, 435 F.3d 904, 908 (8th Cir. 2006).  A motion for summary judgment places an affirmative burden on the non-moving party to go beyond the pleadings and, by affidavit or otherwise, produce specific facts that show that there is a genuine issue for trial.  **See** Fed. R. Civ. P. 56(e)(2); **Janis v. Biesheuvel**, 428 F.3d 795, 799 (8th Cir. 2005).  A nonmoving party must offer proof "such that a reasonable jury could return a verdict for the nonmoving party."  **Anderson**, 477 U.S. at 248.  Additionally, under this court's local rules:

> The party opposing a motion for summary judgment shall include in its brief a concise response to the moving party's statement of material facts.  The response shall address each numbered paragraph in the movant's statement and, in the case of any disagreement, contain pinpoint references to affidavits, pleadings, discovery responses, deposition testimony (by page and line), or other materials upon which the opposing party relies.  <u>Properly referenced material facts in the movant's statement will be deemed admitted unless controverted by the opposing party's response</u>.

**See** NECivR 56.1(b)(1) (emphasis in original).

### C.   Analysis

Kentucky contract law governs this diversity action.  **See** Filing No. 65, Ex. 2 - Feb. 14, 2004 Agreement ¶ 10 ("This Agreement shall be governed by, and construed and enforced in accordance with, the laws of the Commonwealth of Kentucky"), **see also JN**

*Exploration & Prod. v. W. Gas Res., Inc.*, 153 F.3d 906, 909 (8th Cir. 1998) (stating "it is axiomatic that federal courts apply state substantive law in diversity suits") (**citing *Erie R.R. Co. v. Tompkins***, 304 U.S. 64, 78 (1938)).  When a federal district court exercises its diversity jurisdiction over claims brought under state law causes of action, it is bound by the state's law as determined by the highest court in that state.  *Foy v. Klapmeier*, 992 F.2d 774, 780 (8th Cir. 1993).  "If there be no decision by that court then federal authorities must apply what they find to be the state law after giving 'proper regard' to relevant rulings of other courts of the State."  *Comm'r v. Estate of Bosch*, 387 U.S. 456, 465 (1967); **see also *First Colony Life Ins. Co. v. Berube***, 130 F.3d 827, 829 (8th Cir. 1998) (stating a federal court exercising diversity jurisdiction "must predict how the state's highest court would decide the issue").

Tracy argues the Agreement entered into by the plaintiff and the defendant is so indefinite and uncertain as to the promises and performances of the parties that the Agreement is not enforceable as a matter of law.  Specifically, Tracy argues the Agreement fails to define "highest offeror" or set forth the duration of the agreement.  **See** Filing No. 66, p. 5.  Tracy contends that without more specificity with regard to these terms, the agreement is fatally ambiguous leaving too many material questions unanswered.

"In Kentucky, Plaintiffs must show that an actual agreement existed between the parties with clear and convincing evidence.  While the agreement need not cover every conceivable term of the relationship, it must set forth the 'essential terms' of the deal." *Quadrille Bus. Sys. v. Kentucky Cattlemen's Assoc., Inc.*, --- S.W.3d ----, 2007 WL 4553542. at * 3 (Ky. Ct. App. Dec. 28, 2007) (**citing *Industrial Equip. Co. v. Emerson Elec. Co.***, 554 F.2d 276, 288 (6th Cir. 1977)); **see also** 17A Am. Jur. 2d *Contracts* § 190.  "[T]o be enforceable either in law or equity, a contract must be fairly definite and certain; that the promises and performances to be rendered by each party are reasonably certain." *Fisher v. Long*, 172 S.W.2d 545, 547 (Ky. 1943); **see *Kovacs v. Freeman***, 957 S.W.2d 251, 254 (Ky. 1997).  "In reaching a determination as to definiteness and intention of the parties, the whole contract must be considered and be given practical interpretation." *Fisher*, 172 S.W.2d at 547.

6

Applying the standards cited above, the court concludes the contract was plain enough in its terms that each party should have had no difficulty in understanding what was intended. Although the contract does not define the term "highest offeror," the term does not suffer from impenetrable vagueness and uncertainty. The term is not itself susceptible to more than one meaning. The plaintiff contends the confusion is caused by the lack of a definite time period controlling the Agreement. However, "where no time for performance has been set, it will be presumed that performance is to begin within a reasonable time." ***Koplin v. Faulkner***, 293 S.W.2d 467, (Ky. 1956); **see *Walker v. Keith***, 382 S.W.2d 198, 202 (Ky. 1964) ("It is true courts often must *imply* such terms in a contract as 'reasonable time' or 'reasonable price'.") **see also** 17B C.J.S. *Contracts* § 716 (2007). Here, the duration of the contract was dependant on when Spectrum completed obtaining FCC approval. Thereafter, the parties contemplated they would market and secure a buyer for KMOR within a reasonable period of time. The court may imply the term "reasonable period of time" and no definitive time period must be assumed. There is no evidence before the court suggesting the parties were actually confused about the duration of the contract or what was intended. Further, the terms of the contract are plain. For these reasons it is clear there was substantial certainty as to the material terms upon which the minds of the parties met. Therefore, the plaintiff's motion for partial summary judgment must be denied.

## JUDGMENT ON THE PLEADINGS

On January 11, 2008, TBC and Mr. Tracy filed a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) seeking a determination that Spectrum's prayer for punitive damages be denied as a matter of law. Specifically, Tracy seeks a determination that Nebraska law applies to Spectrum's tort claims and there is no basis, under Nebraska law, for punitive damages. Tracy filed a brief (Filing No. 82) in support of the motion. Spectrum filed a brief (Filing No. 92) in opposition to the motion. Spectrum argues Kentucky law, which applies to the contract claims, also applies to the tort claims. Tracy did not file a reply brief.

"Judgment on the pleadings is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law." ***Dillard's Inc. v. Liberty Life Assur. Co. of Boston***, 456 F.3d 894, 899 (8th Cir. 2006). A court will accept as true all facts pleaded by the nonmoving party and grant all reasonable inferences from the pleadings in favor of the nonmoving party. ***Id.*** "A district court sitting in diversity jurisdiction applies the conflict of law rules for the state in which it sits." ***DCS Sanitation Mgmt., Inc. v. Casillo***, 435 F.3d 892, 895 (8th Cir. 2006). "In deciding choice-of-law questions, Nebraska follows the Restatement (Second) of Conflict of Laws (Restatement). Nebraska courts generally give effect to the parties' choice of law." ***Id.*** at 896 (**citing *Vanice v. Oehm***, 526 N.W.2d 648, 651 (Neb. 1995); Restatement § 187(1)). As stated above, the parties chose Kentucky law to apply to their contract, stating "[t]his Agreement shall be governed by, and construed and enforced in accordance with, the laws of the Commonwealth of Kentucky." **See** Filing No. 65, Ex. 2 ¶ 10(a).

The parties' choice of law provision does not end the analysis because the claims at issue are tort claims (Counts II through VII). A party is considered to have consented to application of a state's laws when the "claims are closely related to the interpretation of the contracts and fall within the ambit of the express agreement that the contracts would be governed by [the state's] law." ***Northwest Airlines, Inc. v. Astraea Aviation Serv., Inc.***, 111 F.3d 1386, 1392 (8th Cir. 1997). As alleged by Spectrum, Tracy engaged in intentional conduct to deprive Spectrum of the funds it was entitled to under the contract. Spectrum alleges Tracy initially refused to sell or assist in the marketing of KMOR and then transferred the relevant assets to a third, yet related, party. Additionally, the transfer was conducted in a manner which would not trigger, but avoid, payment obligations under the contract. Accordingly, Spectrum's tort-based allegations stem from the plaintiff's asserted failure to perform under the terms of the contract. For this reason, the court finds Tracy consented to application of Kentucky law to the claims herein. In any event, the court finds that under the greater weight of the circumstances present here, Kentucky has a more significant relationship to the occurrence or interest involved than Nebraska. **See *Malena v. Marriott Int'l, Inc.***, 651 N.W.2d 850, 856-58 (Neb. 2002) (listing factors for consideration); **see also *Inacom Corp. v. Sears, Roebuck & Co.***, 254 F.3d 683, 687-88

(8th Cir. 2001) (finding significant relationship existed where claimant suffered injury). Finally, contrary to Tracy's assertion, Nebraska's prohibition on punitive damages does not work to preclude any application of such damages when warranted under a choice of law analysis.  **See, e.g., *Fanselow v. Rice***, 213 F. Supp. 2d 1077 (D. Neb. 2002).

Since Kentucky allows punitive damages (***Williams v. Wilson***, 972 S.W.2d 260, 262-63 (Ky. 1998)), Tracy has failed to meet the burden of showing judgment on the pleadings should be granted.  Upon consideration,

**IT IS ORDERED:**

1. Tracy Broadcasting Corporation and Michael Tracy's Motion for Partial Summary Judgment (Filing No. 64) is denied.

2. Tracy Broadcasting Corporation and Michael Tracy's Motion for Judgment on the Pleadings (Filing No. 81) is denied.

DATED this 11th day of February, 2008.

BY THE COURT:

s/ Thomas D. Thalken
United States Magistrate Judge