IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| TRACY BROADCASTING CORP., | ) | |
| | ) | |
| Plaintiff, | ) | 8:06CV336 |
| | ) | |
| vs. | ) | ORDER |
| | ) | |
| SPECTRUM SCAN, LLC, | ) | |
| | ) | |
| Defendant, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| MICHAEL TRACY, | ) | |
| | ) | |
| Counter-Defendant. | ) | |

This matter is before the court on Tracy Broadcasting Corporation (TBC) and Michael Tracy's (collectively Tracy) Motion in Limine (Filing No. 84) and Second Motion in Limine (Filing No. 102).[1] Both motions are fully briefed and will be addressed separately below.

BACKGROUND

This matter arises out of a dispute regarding an agreement between TBC and Spectrum Scan, LLC (Spectrum) entered into on February 14, 2004. **See** Filing No. 1, ¶ 3; Filing No. 56. Initially, TBC filed a complaint against Spectrum, seeking a declaratory judgment regarding the agreement between the parties involving the sale of KMOR, one of the radio stations owned by TBC. **See** Filing No. 1 Ex. A - Complaint ¶¶ A-D. Spectrum alleges the agreement between TBC and Spectrum required TBC to sell KMOR and to give 40% of the purchase price from the sale of KMOR to Spectrum in exchange for work Spectrum performed in upgrading KMOR's radio station license. **See** Filing No. 38 - Counterclaim p. 1. Spectrum filed an answer to TBC's complaint and a counter-claim

---

[1] As a convenience, this document contains certain cross-document hyperlinks to documents previously filed in this case. The hyperlinked documents appear in blue underlined text.

against TBC.  **See** Filing No. 5.  In this initial counter-claim, Spectrum sought to recover $1,400,000 plus costs from TBC for TBC's alleged failure to fulfill its contractual obligations under the agreement.  *Id.*

On April 26, 2007, Spectrum filed a Second Amended Counter-Claim and Cross-Complaint, in which Spectrum joined Mr. Tracy as a new party to the previously filed counter-claim against TBC.  **See** Filing No. 38, ¶ 5.  Mr. Tracy is the president and owner of TBC.  Spectrum's Second Amended Counter-Claim and Cross-Claim alleges nine theories of liability against Mr. Tracy, TBC, or both.  Specifically, Spectrum avers breach of contract by TBC (Count 1), fraud by Tracy (Count 2), tortious interference by Mr. Tracy (Count 3), fraudulent conveyance by TBC (Count 4), aiding and abetting in a fraudulent conveyance by Mr. Tracy (Count 5), impossibility of performance (Count 6), abuse of process by TBC (Count 7), and quantum meruit and unjust enrichment against TBC (Counts 8 and 9).  **See** Filing No. 38.  These claims are based on Spectrum's allegations that Mr. Tracy, with TBC, attempted to defraud Spectrum by transferring an interest in KMOR to Tigre Broadcasting, an entity primarily owned by Tracy.  *Id.*  Further, Spectrum alleges Tracy concealed the transfer so as to avoid selling KMOR and paying Spectrum's fee.  *Id.*  Spectrum seeks punitive damages in connection with the claims against TBC and Mr. Tracy.

## ANALYSIS

Evidence is excluded on a motion *in limine* "only when evidence is clearly inadmissible on all potential grounds."  *Hawthorne Partners v. AT & T Tech., Inc.*, 831 F. Supp. 1398, 1400 (N.D. Ill. 1993).  The *Hawthorne Partners* court continued:

> This court has the power to exclude evidence *in limine* only when evidence is clearly inadmissible on all potential grounds. . . .  Unless evidence meets this high standard, evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in proper context. . . .  Denial of a motion *in limine* does not necessarily mean that all evidence contemplated by the motion will be admitted at trial.  Denial merely means that without the context of trial, the court is unable to determine whether the evidence in question should be excluded.

*Hawthorne Partners*, 831 F. Supp. at 1400-01 (citations omitted). Furthermore, the Eighth Circuit has noted that "[e]videntiary rulings made by a trial court during motions *in limine* are preliminary and may change depending on what actually happens at trial." *Walzer v. St. Joseph State Hosp.*, 231 F.3d 1108, 1113 (8th Cir. 2000) (**citing** *Luce v. United States*, 469 U.S. 38, 41 (1984)). Finally, the *Hawthorne Partners* court noted: "[t]he court will entertain objections on individual proffers as they arise at trial, even though the proffer falls within the scope of a denied motion *in limine*." *Hawthorne Partners*, 831 F. Supp. at 1401.

**A.    Privilege**

Based on the attorney-client privilege, Tracy seeks to exclude a March 7, 2005 letter from Mr. Tracy to his attorney (also known as Tracy Depo. Ex. 38) and a related spreadsheet (Tracy Depo. Ex. 39). **See** Filing No. 84. Tracy filed a brief (Filing No. 86) and an affidavit in support of the motion. Tracy contends the documents were inadvertently disclosed during a document production consisting of four large notebooks of exhibits. Additionally, Tracy states that upon learning of the disclosure counsel immediately sought protection for the documents by objecting to their use during a deposition and filing the current motion. For resolution, Tracy argues the court should apply a lenient or middle-road approach to the inadvertent disclosure.

Spectrum filed a brief (Filing No. 95), with evidence attached, in opposition to the motion in limine. Spectrum contends Tracy's motion should be denied for three reasons. First, the documents are not subject to the attorney-client privilege because the documents are related to business advice, rather than legal advice. Second, Tracy waived any privilege by instituting the instant lawsuit and making arguments conclusively disproved by the documents. Third, Tracy waived any privilege by waiting 15 months to seek legal protection of the documents after disclosure.

The electronic communications at issue are dated March 7, 2005. One document is a narrative letter from Mr. Tracy to an attorney, Timothy Dix, detailing the history of TBC and the specifics of the radio-station sale that Mr. Tracy was contemplating at the time. As Mr. Tracy stated in the letter to Mr. Dix: "I want to have you represent me in this matter

in so far as establishing the amount of write down on the stock and loans we can obtain to offset the income from the sale of the broadcast properties." **See** Filing No. 95-4 - Letter p. 3. The second document is a spreadsheet that parallels the first, and sets forth the details of Mr. Tracy's financial status. According to Spectrum, the documents taken together describe the nature of the offer to purchase KMOR, the amount of commissions owed to Spectrum and Tracy's true motivation for avoiding the sale of KMOR, i.e., financial rather than a genuine dispute about the Spectrum/TBC agreement. Spectrum contends the letter directly contradicts several assertions made by Tracy in this litigation.

During a November 28, 2006 deposition, Spectrum asked Mr. Tracy questions about the documents. Specifically, Spectrum asked about Mr. Dix's identity. Mr. Tracy stated that Mr. Dix was an attorney tax accountant. **See** Filing No. 95-2 - Tracy Depo. p. 219. Counsel for Tracy asserted the attorney-client privilege for the letter and initially Mr. Tracy refused to comment or answer questions about the letter. Later, Mr. Tracy did answer questions about the spreadsheet, without additional privilege objections. *Id.* p. 223-28. Tracy did not attempt to retrieve the documents or make any motion to the court to protect the disclosure of the documents until the instant motion in limine filed on January 21, 2008. The letter, however, was made part of the record in this case during the briefing of Tracy's motion for summary judgment. On November 1, 2007, Spectrum quoted and discussed the letter in its brief and attached the document to the index of evidence. **See** Filing No. 72 - Brief p. 9-11; Filing No. 73-12 Ex. K. Tracy made no objection to the use of the document for that purpose.

Assuming, without deciding, that the communications at issue are protected work product, the court concludes Tracy has waived any privilege.[2] The party asserting a privilege bears the burden of establishing the privilege and that a waiver did not occur. ***Kansas-Nebraska Natural Gas Co., Inc. v. Marathon Oil Co.***, 109 F.R.D. 12, 20 (D. Neb. 1985); **see** *United States v. Hatcher*, 323 F.3d 666, 675 (8th Cir. 2003). In this circuit, "courts have generally followed one of three distinct approaches to attorney-client privilege

---

[2] Tracy did not address this issue or whether they have placed the contents of the communication "at issue" in the lawsuit. The court need not resolve those issues based on the determination that Tracy has waived any privilege which may have applied to the communications.

waiver based on inadvertent disclosures: (1) the lenient approach, (2) the "middle of the road" approach, which is also called the ***Hydraflow*** approach, and (3) the strict approach." ***Gray v. Bicknell***, 86 F.3d 1472, 1483 (8th Cir. 1996) (**citing *Hydraflow, Inc. v. Enidine Inc.***, 145 F.R.D. 626, 637 (W.D.N.Y.1993)).  The lenient approach, requiring knowing and intentional waiver, has been rejected by the Eighth Circuit for policy reasons.  ***Id.***  Similarly, the strict approach, stripping privilege based on any production, is generally rejected.  ***Id.***  The Eighth Circuit prefers the middle of the road approach in diversity cases, like the one at bar, where the state court is silent on the issue.  ***Id.***; **see also *Engineered Prods. Co. v. Donaldson Co., Inc.***, 313 F. Supp. 2d 951, 1021-21 (N.D. Iowa 2004).  Nebraska courts are thus far silent on this issue, however it is likely Nebraska courts would apply the middle of the road approach.  **See** Fed. R. Evid. 501; **see *Daniels v. Allstate Indem. Co.***, 624 N.W.2d 636, 640-41 (Neb. 2001) ("A waiver is a voluntary and intentional relinquishment of a known right, privilege, or claim, and may be demonstrated by or inferred from a person's conduct."); **c.f. *Kansas-Nebraska Natural Gas***, 109 F.R.D. at 19-21 (mere inadvertent disclosure did not waive the privilege).

> Under the middle of the road approach:
>
>> the court undertakes a five-step analysis of the unintentionally disclosed document to determine the proper range of privilege to extend.  These considerations are (1) the reasonableness of the precautions taken to prevent inadvertent disclosure in view of the extent of document production, (2) the number of inadvertent disclosures, (3) the extent of the disclosures, (4) the promptness of measures taken to rectify the disclosure, and (5) whether the overriding interest of justice would be served by relieving the party of its error.

***Gray***, 86 F.3d at 1483-84.

Under the circumstances of this case, Tracy has failed to meet the burden of showing no waiver occurred.  This is so primarily based on the extent of the disclosures and Tracy's failure to promptly take measures to rectify the disclosures.  The letter was discussed during the deposition and extensively during the summary judgment briefing.  Tracy failed to stand on the initial privilege objection or make any objection to the later use.  There is no evidence Tracy sought to object to the use of or sought protection for the

spreadsheet until now. Further, Tracy makes no showing the interest of justice would be served by relieving Tracy of the presumed production error. Therefore, Tracy's motion will be denied with regard to the March 7, 2005 correspondence.

**B.     February 24, 2004 Agreement**

Tracy seeks to exclude as evidence the February 14, 2004 agreement. Tracy contends the agreement, although between Spectrum and TBC, was signed on behalf of Spectrum by "Rodco, Inc., Member By Rodney Burbridge, President." Tracy states Rodco, Inc. was a dissolved corporation when the agreement was signed. Tracy argues the agreement is invalid because it was signed by an unauthorized managing partner with no authority to carry on business. Tracy filed a brief (Filing No. 103) and an index of evidence (Filing No. 104) in support of the motion to exclude the February 14, 2004 agreement.

Spectrum filed a brief (Filing No. 109), with evidence attached, in opposition to the second motion in limine. Spectrum explains Rodney Burbridge is the President of Spectrum. Further, Mr. Burbridge was Rodco, Inc.'s sole owner. When Spectrum was formed, Rodco, Inc. owned a portion of the limited liability company and was the managing member. Spectrum states that on December 20, 2007, the members of Spectrum consented to the transfer of all of Rodco, Inc.'s interests in Spectrum to Mr. Burbridge, personally. **See** Filing No. 109, Ex. 1.[3] In any event, Spectrum contends Tracy is estopped from avoiding the contract by virtue of judicially admitting the execution of the contract, between TBC and Spectrum, in the complaint. Spectrum argues Tracy could not raise arguments about the ambiguity of the terms of the agreement without the judicial admission. Similarly, Spectrum argues Tracy is estopped from denying the corporate existence because Tracy "dealt with [it] as a corporation and is estopped to deny its corporate existence." **See *McGuire v. Bastain Blessing Co.*** , 122 S.W.2d 513, 515 (Ky. App. 1938).

Tracy fails to show the February 24, 2004 agreement is clearly inadmissible on all potential grounds. Assuming Tracy may at the time of trial contest the execution of the

---

[3] Mr. Burbridge never reinstated Rodco, Inc. However, Michael J. Tracy incorporated in the name Rodco, Inc. as a Kentucky, Corporation on April 12, 2007. **See** Filing No. 109, Ex. 2.

6

agreement and maintains there may still be some dispute about its validity, the February 24, 2004 agreement is relevant to a final determination on that issue. Otherwise, the February 24, 2004 agreement is integral to the parties' claims and defenses in this case. Therefore, Tracy's motion will be denied with regard to the February 24, 2004 agreement. Upon consideration,

**IT IS ORDERED:**

1. Tracy Broadcasting Corporation and Michael Tracy's Motion in Limine (Filing No. 84) is denied.

2. Tracy Broadcasting Corporation and Michael Tracy's Second Motion in Limine (Filing No. 102) is denied.

DATED this 15th day of May, 2008.

BY THE COURT:

s/Thomas D. Thalken
United States Magistrate Judge